## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sherry Ihde; | Court File No. 22-CV-1327 |
| *Plaintiff,* | |
| *vs* | **COMPLAINT** |
| The Mayo Clinic; a Minnesota non-profit corporation | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

Plaintiff Sherry Ihde makes the following allegations for her complaint against the Defendant the Mayo Clinic.

### INTRODUCTION

1.     Plaintiff Sherry Ihde ("Plaintiff Ihde") is 47 years old and worked as the supervisor of Defendant the Mayo Clinic's ("Defendant Mayo") Bacteriology Lab through February 21, 2022.  Plaintiff Ihde had been employed with Defendant Mayo continuously since December 21, 1998.

2.     In October, 2021, Defendant Mayo mandated that all its employees receive the Covid-19 vaccination as a condition of continuing their employment ("Vaccine Mandate").  Many of Defendant Mayo's employees, including Plaintiff Ihde, objected to receiving these vaccinations because of her sincerely-held religious beliefs.  Plaintiff Ihde requested a religious accommodation from Defendant Mayo to exempt her from taking the Covid-19 vaccine in order that she could continue her employment.  Defendant Mayo

granted Plaintiff Ihde her request for a religious exemption from taking the Covid-19 vaccine on November 24, 2021.

3.      However, in December 2021, Defendant Mayo, as part of its Vaccine Mandate policy, stated that those employees who received a religious or medical exemption would have to submit to weekly Covid-19 testing after receiving a religious or medical exemption. Rather than undertake an individual interactive process as required for evaluating an accommodation of religious objection to taking the Covid-19 vaccine, Defendant Mayo required Plaintiff Ihde to undergo weekly Covid-19 testing.

4.      Plaintiff Ihde then filed a further request for a religious accommodation to exempt her from undergoing weekly Covid-19 testing.  Once again, Defendant Mayo failed to undertake an individual interactive process as required for evaluating an accommodation of a religious objection to undergoing weekly Covid-19 testing.  As a result of Defendant Mayo's human resources department's failure to undertake an individual interactive process to accommodate Plaintiff Ihde's religious objection to undergoing weekly Covid-19 testing, Plaintiff Ihde on her own contacted her supervisor to seek an accommodation from weekly testing.  On January 12, 2022, in an email sent at 8:55 a.m., Plaintiff Ihde's supervisor, Nicole Kang, approved Plaintiff Ihde's request for an accommodation to work remotely during the time period Defendant Mayo would require Plaintiff Ihde to undergo weekly testing for Covid-19.  However, later that same day, at 5:10 p.m., Defendant Mayo's human resources department sent Plaintiff Ihde an email stating that her request for a religious accommodation to undergo weekly testing for Covid-19 was denied.  Despite working for Defendant Mayo for 23 years, Defendant

Mayo terminated Plaintiff Ihde on February 21, 2022 because of Plaintiff Ihde's refusal to undergo weekly testing.  Finally, 15 days after Plaintiff Ihde's termination, Defendant Mayo suspended its requirement that those who received a religious or medical exemption submit to weekly testing demonstrating that the terminations were unnecessary or a pretext.

5.      Based on Defendant Mayo's actions, Plaintiff brings claims under Title VII for religious discrimination, the Americans with Disabilities Act based on Defendant Mayo mandating a vaccine and testing, related state claims under the Minnesota Human Rights Act for religious discrimination and disability discrimination and breach of contract.

## JURISDICTION AND VENUE

6.      Plaintiff has fulfilled the jurisdictional requirements of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"), including the filing of a Charge with the EEOC, and the receipt of a right-to-sue letter from Equal Employment Opportunity Commission ("EEOC") following closure of the EEOC file, all in compliance with 42 U.S.C. §2000e-5(f)(1).

7.      This Court has original subject matter jurisdiction over this case, as it raises claims pursuant to federal statute, under 28 U.S.C. §1331. This Court further has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

8.      This Court has personal jurisdiction over Defendant the Mayo Clinic as an entity as it is a non-profit corporation operating in and located in the State of Minnesota.

9.     Defendant Mayo Clinic is subject to the provisions of Title VII and the ADA because Defendant Mayo Clinic employs more than fifteen employees in each of twenty or more calendar weeks in the current or preceding calendar year under 42 U.S.C. §2000e (b) and 42 U.S.C. §12111 (5)(A).

10.     Venue is proper in the District of Minnesota under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in Minnesota, and Defendant Mayo Clinic conducts business in the State of Minnesota.

## PARTIES

11.     Plaintiff Sherry Ihde is a former employee of Defendant Mayo.  Plaintiff Ihde resides in Zumbro Falls, Minnesota.

12.     Defendant Mayo is a Minnesota non-profit corporation headquartered in Minnesota which operates medical facilities in Minnesota.

## FACTS

13.     Plaintiff Sherry Ihde is a Minnesota resident who worked for Defendant Mayo for 23 years.  In 2021, Defendant Mayo employed Plaintiff Ihde as the supervisor in its Bacteriology Lab in Rochester, Minnesota.  Plaintiff Ihde's job duties required her to supervise the Bacteriology Lab. Two assistant supervisors reported to Plaintiff Ihde. Plaintiff Ihde's work primarily required her to work at her computer and have meetings with individuals which meetings could be held remotely via Zoom (or other computer meeting application) or by phone.  Plaintiff Ihde did not have contact with patients.

14.     Plaintiff Ihde is a Christian who believes, based on her interpretation of Scripture, that her body is a Temple to the Holy Spirit and it violates her conscience to take the vaccine. Plaintiff Ihde believes frequent medical testing for Covid-19 also violates her religious beliefs.

15.     Defendant Mayo recognized the important work that all of its employees were doing—the unvaccinated and the vaccinated—during the Covid-19 pandemic.  On September 28, 2021, the President and CEO of Defendant Mayo, Gianrico Farrugia, M.D., along with the Chief Administrative Officer, Jeff Bolton, wrote to Defendant Mayo's employees:

> "*On behalf of the leaders of Mayo Clinic's sites and shields, thank you for the compassionate care you provide to our patients, your excellent service to Mayo Clinic, and the supportive and collaborative environment you create for all of our colleagues.  We truly appreciate you and your efforts to live our values every day.*"

16.     However, just two weeks later, Defendant Mayo implemented its Vaccine Mandate which provided that "all Mayo Clinic staff members" must get vaccinated or they would be considered "noncompliant," later "placed on unpaid leave," and eventually "terminated."  The Vaccine Mandate applied to "all staff, including **remote** workers." Thus, appreciation of the important work performed by unvaccinated employees disappeared only two weeks after being celebrated.

17.     Defendant Mayo announced the Vaccine Mandate on October 13, 2021. Defendant Mayo's Vaccine Mandate required all staff to become vaccinated against Covid-19, and that if they were not already vaccinated or only partially vaccinated, they

would have to become vaccinated or be approved for a medical or religious exemption by December 3, 2021, or be terminated.

18.     On October 25, 2021, Defendant Mayo sent a communication outlining the steps to comply with the Vaccine Mandate.  Beginning on December 3, 2021, Defendant Mayo issued Final Written Warnings to noncompliant staff with instructions on complying by January 3, 2022, or be terminated.

19.     Defendant Mayo announced that it would accept from its employees requests for both medical and religious exemptions from the Vaccine Mandate, and did allow for employees to apply for "*medical and religious exemptions*" to the Vaccine Mandate, and even provided "*forms*" for such applications.

20.     However, what Defendant Mayo gave with one hand, it took away with the other by proclaiming that "*it is anticipated that a <u>small number of staff will have qualifying religious exemption</u>*."  (emphasis added)  It further wrote: "*applications for a religious exemption will be denied if the panel determines the applicant <u>does not demonstrate a sincerely held religious belief</u>,* (emphasis added).  Further, Defendant Mayo declared: *"[o]nly a <u>small number of staff are expected to qualify for a religious exemption</u>."* (emphasis added)

21.     Defendant Mayo thus put itself in the position of deciding the sincerity of the religious belief of the Plaintiffs and, whether a belief was "religious" or not.

22.     Defendant Mayo also expressed limitations to the "*medical exemption*" to the Vaccine Mandate by stating: "*The only absolute medical contraindications to vaccination for COVID-19 are severe or immediate reaction to a prior dose of the*

*vaccine, known allergy to a vaccine component, or a preexisting and clinically diagnosed fear of needles.*"  Other medical conditions were preemptively discounted or disregarded.

23.     The pre-determined limitations on its religious and medical exemption policies were supposed to be kept in the dark, as the Defendant Mayo wrote to the high ranking personnel who were to implement the policies: "*This message is intended for regional supervisors, managers and other leaders, so <u>please do not share broadly</u>.*" (emphasis added).

24.     After Defendant Mayo implemented its Vaccine Mandate, Plaintiff Ihde applied for a religious accommodation to taking the Covid-19 vaccine.  As set forth above, Plaintiff Ihde is a Christian and submitted her application to Defendant Mayo stating that Plaintiff Ihde's religious beliefs prevented her from taking the Covid-19 vaccine.

25.     On November 24, 2021, Defendant Mayo notified Plaintiff Ihde that Defendant Mayo had approved her request for a religious accommodation from taking the Covid-19 vaccine.

26.     In addition, Plaintiff Ihde also attempted to submit a request for a medical accommodation to taking the Covid-19 vaccine to Defendant Mayo.  Plaintiff Ihde had taken an influenza vaccine in 2008 and developed a reaction to the vaccine which ultimately required her to be hospitalized.  Since 2008, Plaintiff Ihde has not taken any further influenza vaccinations or any vaccination she had not had prior to 2008 because of the severe reaction she had to the influenza vaccination in 2008.

27.     However, Defendant Mayo's Vaccine Mandate policy restricted medical exemptions to taking the Covid-19 vaccine to individuals who either had taken the Covid-19 vaccine and developed a severe reaction to the vaccine or individuals who had a condition which would react to one of the components to the Covid-19 vaccine (or had a phobia to needles).  Moreover, Defendant Mayo's policy required a physician to sign the medical exemption form.  Plaintiff Ihde met with three Defendant Mayo physicians to have them approve Plaintiff Ihde's request for a medical exemption based on previous severe reaction to an influenza vaccine.  Each of Defendant Mayo' physicians refused to sign the medical exemption because Plaintiff Ihde did not meet the criteria contained in Defendant Mayo's medical exemption policy stated above.  Plaintiff Ihde was concerned that similar to her reaction to the influenza vaccine in 2008 which required hospitalization, Plaintiff Ihde could develop a severe reaction to the newly developed Covid-19 vaccine.

28.     Pursuant to Defendant Mayo's Vaccine Mandate policy, if Defendant Mayo approved a religious exemption for an employee to exempt the employee from taking the Covid-19 vaccine, Defendant Mayo required such employees, including Plaintiff Ihde, to subject themselves to weekly Covid-19 testing.  Pursuant to Defendant Mayo's Vaccine Mandate policy, the purpose of the testing was to ensure that individuals who had received a religious or medical exemption to the Vaccine Mandate would not contract Covid-19 and expose themselves to others at Defendant Mayo's facilities.  Defendant Mayo's policy however was illogical.  By December, 2021, research had demonstrated that individuals who had received the Covid-19 vaccine could still contract Covid-19 and

be infectious to others.  In addition, weekly testing would not prevent exempt employees from spreading the Covid-19 virus at Defendant Mayo because such employees could contract Covid-19 and become infectious immediately after taking a test and receiving a negative result and expose individuals at Defendant Mayo during the time period between taking that test and taking the next weekly Covid-19 test.  Finally, less than 4% of Defendant Mayo's employees had not taken the Covid-19 vaccine by January, 2022. Therefore, Defendant Mayo's policy of just testing the unvaccinated exempt individuals was not effective in preventing the spread of Covid-19.

29.     Moreover, Plaintiff Ihde also had a religious objection based on her Christian beliefs to undergo weekly testing for Covid-19.  On January 9, 2022, Plaintiff Ihde submitted to Defendant Mayo a religious accommodation request based on her Christian beliefs to undergoing weekly testing for Covid-19. Plaintiff Ihde's Christian religious beliefs prevented her from undergoing the weekly testing for Covid-19.

30.     Despite the requirement that Defendant Mayo undertake an individualized and interactive effort to accommodate a religious objection to the weekly testing, Defendant Mayo made no effort to undertake an individualized and interactive effort to accommodate Plaintiff Ihde's religious accommodation request.

31.     Nonetheless, Plaintiff Ihde undertook an effort to seek out another mechanism to accommodate her religious objection to weekly testing.  Plaintiff Ihde discussed with her supervisor at Defendant Mayo, Nicole Kang, to seek a religious accommodation for Plaintiff Ihde to work remotely.  As Plaintiff Ihde's supervisor, Defendant Mayo employee Kang would be in the best position to know whether Plaintiff

Ihde working remotely in her position as supervisor of the Bacteriology Lab would cause any undue hardship to Defendant Mayo.  Plaintiff Ihde's supervisor Kang concluded it would not and approved Plaintiff Ihde's request for a religious accommodation to work remotely.  More specifically, on January 12, 2022, at 8:55 a.m., Defendant Mayo's supervisory employee Kang sent Plaintiff Ihde an email stating that Plaintiff Ihde was approved to work remotely.  The email stated in its entirety as follows:

> Hi Sherry,
>
> A formal note to approve the full WFA (ie., "Work from Anywhere") set-up for you. Please feel free to take the monitors in your office for additional displays in addition to your laptop dock and any accessories needed. Please let me know if anything additional could be ordered to assist with your WFA set-up at home.
>
> Thank you,
> Nicole

32.    Despite Defendant Mayo's supervisory employee Kang approving Plaintiff Ihde to work remotely, later on January 12, 2022, Defendant Mayo denied Plaintiff Ihde's request to accommodate her religious objection to undergoing weekly testing for Covid-19 in an email sent at 5:10 p.m.  In discussions Plaintiff Ihde had with Kevin Ryan, employed with Defendant Mayo's Human Resources Department, Ryan told Plaintiff Ihde that Defendant Mayo would not even consider her religious accommodation request appeal to forego weekly Covid-19 testing.  Nonetheless, Plaintiff Ihde appealed Defendant Mayo's denial of her request for an accommodation.  Consistent with Mr. Ryan's statement to Plaintiff Ihde, Defendant Mayo never responded to Plaintiff Ihde's appeal.

33.     After Defendant Mayo denied Plaintiff Ihde's request for a religious accommodation for testing, Defendant Mayo placed Plaintiff Ihde on administrative leave on January 20, 2022.  On February 21, 2022, Defendant Mayo terminated Plaintiff Ihde. Defendant Mayo also determined that Plaintiff Ihde could never be rehired by Defendant Mayo or any of its affiliates.  Given that Defendant Mayo owns or controls most of the medical facilities surrounding Rochester, Minnesota, it is virtually impossible for Plaintiff Ihde to obtain employment in her field without moving her residence.

34.     Only 15 days later, on March 8, 2022, Defendant Mayo announced that it had suspended its requirement that those employees who had received either a religious or medical exemption to the Vaccine Mandate would have to undergo weekly testing.

35.     Plaintiff Ihde received a Right to Sue letter from the EEOC.

36.     During her employment with Defendant Mayo, Plaintiff Ihde had received positive, even glowing job performance reviews and several promotions by Defendant Mayo.  Plaintiff Ihde could have retired within 7 years of her termination date with 30 years of service with Mayo.  When she was terminated on February 21, 2022, she was marked as not eligible for rehire.

37.     Plaintiff Ihde's religious beliefs had been recognized as sincere in November 2021, but later were deemed by Mayo to be not sincere only two months later, leading to the denial of her request for a religious exemption and subsequent termination.

38.     On a January 18, 2022 Zoom meeting, Defendant Mayo's Chair of Practice Administration, Roshanak Didehban, stated that Defendant Mayo did not believe some employees' sincerely held religious beliefs were sufficiently "consistent" and that these

employees' sincerely held religious beliefs were not "[a] sincerely held belief across all aspects of life."

39.     Defendant Mayo created an ad hoc panel to review religious and medical accommodation requests to the Vaccine Mandate. Defendant Mayo denied most requests for religious accommodation, with the exception that some were granted, but conditioned upon submission to invasive, supervised weekly testing, and some were granted to younger, lower paid employees while those of older employees were denied.

40.     As a result of the Defendant Mayo's policy on restricting religious and medical exemptions, very few people qualified for those exemptions, resulting in mass terminations for those, including Plaintiff Ihde, who refused the vaccination and weekly testing.

41.     The denials of the requests for religious and medical exemptions all contained the same boilerplate language:

> "*Thank you for submitting your request for religious exemption.  The information you provided was carefully considered.  While this may not be the news you were hoping to receive, your religious accommodation has not been approved.  Based on the information provided, your request did not meet the criteria for a religious exemption accommodation*."

42.     There was no case-by-case analysis or individualized interactive process to discuss each employees' exemption request or possible accommodation. In response to requests for explanation or information, Defendant Mayo wrote: "HR is not able to share what criteria was used to review/approve the exemption. A small team of employees reviewed each request and based on what was provided to them from each individual employee is what was used in the approval/denial decision."

43.     Rather than engage in a legitimate interactive process, respect the sincerity of Plaintiff Ihde's religious beliefs, or attempt reasonable accommodation, Defendant Mayo used more boilerplate language to justify its pre-determined result:

"*Generally, denials occur because the requestor has not clearly stated their sincerely held belief, demonstrated it is a sincerely and consistently held belief, and/or clearly defined the conflict between their religious belief and receiving the COVID-19 vaccine*."

44.     Defendant Mayo actually specifically disavowed an individual interactive process by writing: "Specific feedback on individual requests will not be provided, … it is not possible to provide individual feedback."

45.     Plaintiff sought further clarification on Defendant Mayo's criteria for determining whether a religious belief constituted a "sincerely held religious belief," and the basis for Mayo determining that the employee did not have a "sincerely held religious belief," but the Plaintiff was denied information beyond the generalized, identical language in the letters, and a reference to employees' beliefs generally not being sufficiently "consistent" across "all aspects of life."

46.     Defendant Mayo did not provide information about its process for determining whether the employees sincerely held religious beliefs would be accommodated either.

47.     Both the original denial of the religious exemption and the denial of the requests for reconsideration contained this warning at the bottom: "*Do not disseminate, distribute, forward, or copy the content of this notification*."

48.     Defendant Mayo staff were further instructed to *"endorse the vaccine or say nothing."*

49.     Defendant Mayo terminated Plaintiff Ihde's employment on February 21, 2022 based on her refusal to obtain a Covid-19 vaccine, or to submit to testing.

50.     Plaintiff Ihde submitted good-faith statements of her sincerely-held religious beliefs, with explanations of how her faith constrained her from accepting Covid-19 testing.  Defendant Mayo refused to consider Plaintiff Ihde's requests and in fact told her the requests would not be considered.

51.     The vaccine is being mandated for the employees to be "fully vaccinated," despite the phrase "fully vaccinated" having a definition that has changed from one shot, to two shots, then three shots, then four shots, and even discussion of a fifth shot or annual shots.

52.     The vaccines are being mandated despite accumulating evidence that the vaccines do not provide protection as long lasting as had been previously represented, do not prevent infection or transmission, but only allegedly reduce the severity of Covid-19 if one contracts it.

53.     While many claimed that the Covid-19 pandemic was a pandemic of the unvaccinated, now the overwhelming majority of people getting COVID were vaccinated to one extent or another.

54.     In fact, the numbers of Covid-19 positive hospital patients was also overstated.

55.     Thus, the extent of Covid-19 infections, the severity of the Covid-19 infection, and the efficacy of the vaccines, and the time-length of vaccine protection may all have been overstated, contributing to an over exuberance in mandating vaccines, and punishing the unvaccinated, as Defendant Mayo has done as set forth above.

56.     Early on in the Covid-19 pandemic, and before any vaccines were available, Defendant Mayo itself provided free testing to determine "*how many Mayo Clinic staff have developed antibodies against SARS-Co-V-2*."

57.     Rather than disclosing the results of its determination on the numbers of Defendant Mayo's "staff" that "have developed antibodies against SARS-Co-V-2," or disclosing studies on the "duration of immunity after COVID-19," Defendant Mayo has not made public this information and has instead has issued its Vaccine Mandate.

58.     After Defendant Mayo carried out most of the terminations between January 3, 2022 and Plaintiff Ihde's termination on February 21, 2022, Defendant Mayo announced it was suspending weekly testing of the unvaccinated on March 8, 2022. Thus, remaining unvaccinated employees are now treated similarly to vaccinated employees.

59.     Unvaccinated employees such as Plaintiff Ihde would no longer be forced to test weekly, and would no longer be terminated for objecting to testing, which Defendant Mayo only 15 days after her termination has now determined is unnecessary.

## FIRST CAUSE OF ACTION

## Religious Discrimination and Failure to Accommodate under Title VII of the Civil Rights Act of 1964

60.     Plaintiff restates and realleges paragraphs 1 through 59 as if fully set-forth herein.

61.     Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

62.     Plaintiff Ihde is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

63.     Plaintiff Ihde has a sincerely held religious belief which prevented her from either receiving the Covid-19 vaccine or submitting to weekly testing for Covid-19.  The Plaintiff Ihde's beliefs arise under Christianity.

64.     Plaintiff informed Mayo of the conflict between her religious belief and the Vaccine Mandate.

65.     Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id*. § 2000e-2. Title VII further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs. *Id*. § 2000e(j).

66.     Title VII prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiff Ihde's religious beliefs, or whether Plaintiff Ihde's exercise of her beliefs is logical or as consistent as Defendant Mayo believes they should be.

67.     Guidance issued by the Equal Employment Opportunity Commission and decisions of the federal courts require that requests for reasonable accommodation be considered based on their individual, particularized circumstances, and that any claim of

16

undue hardship or "direct threat" by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

68.     Plaintiff Ihde, in her request for accommodation from the Defendant Mayo's Vaccine Mandate, made an individualized request for accommodation.

69.     In response to the Plaintiff Ihde's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a uniform, blanket rule in rejecting Plaintiff Ihde's request for accommodation in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation.

70.     In fact, Defendant Mayo's supervisor for Plaintiff Ihde, Kang, had approved for Plaintiff Ihde to work remotely to accommodate Plaintiff Ihde's request for a religious accommodation from Defendant Mayo's weekly testing.  Nonetheless, Defendant Mayo's human resources department later summarily rejected Plaintiff Ihde working remotely.

71.     Despite the Plaintiff Ihde's consistent requests for Defendant Mayo to engage in dialogue, Defendant Mayo refused throughout to engage in the interactive process, and instead rejected Plaintiff Ihde for generalized reasons using a form letter.

72.     Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

73.     Because of Defendant Mayo's unlawful actions, Plaintiff Ihde has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

### State law religious discrimination claim under MHRA 363A.08

74.    Plaintiff Ihde restates and realleges paragraphs 1 through 73 as if fully set-forth herein.

75.    Minn. Stat. Sec. 363A.01, et seq. prohibits discrimination in employment based on religion.

76.    Defendant Mayo is an "employer" within the meaning of Minn. Stat. 363A.01.

77.    Plaintiff Ihde is an "employee" within the meaning of Minn. Stat. 363A.01.

78.    Plaintiff Ihde has a sincerely held religious belief which prevented her from undergoing weekly testing for the Covid-19 virus.

79.    Plaintiff Ihde informed Defendant Mayo of the conflict between her religious belief and weekly testing for the Covid-19 virus.

80.    Minn. Stat. 363A.01 et seq. prohibits discrimination on the basis of religion and further requires covered employers to provide reasonable accommodation to their employees' sincerely held religious beliefs.

81.    Minn. Stat. 363A.01 et seq. prohibits Defendant Mayo from scrutinizing what it believes to be the sincerity of Plaintiff Ihde's religious beliefs, or whether Plaintiff Ihde's exercise of her beliefs is logical or as consistent as Defendant Mayo believes they should be.

82.    In response to the Plaintiff Ihde's request for reasonable accommodation of her sincerely-held religious beliefs, Defendant Mayo and its ad hoc panel applied a

uniform, blanket rule in rejecting Plaintiff Ihde's request for a reasonable accommodation. The religious exemptions granted were frequently those of employees with less seniority and therefore at a lower wage.

83.    Despite the Plaintiff Ihde's requests for Defendant Mayo to engage in dialogue, Defendant Mayo refused throughout to engage in the interactive process, and instead rejected Plaintiff for generalized reasons, using an identical form letter.

84.    Defendant Mayo's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of Minn. Stat. sec. 363A.01 et seq.

85.    Because of Defendant Mayo's unlawful actions, Plaintiff Ihde has suffered and continues to suffer economic and other damages in an amount to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## THIRD CAUSE OF ACTION

### Discrimination and Failure to Accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

86.    Plaintiff Ihde restates and realleges paragraphs 1 through 85 as if fully set forth herein.

87.    Defendant Mayo is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A).

88.    Plaintiff Ihde is an "employee" within the meaning of 42 U.S.C. § 12111(4).

89.     The ADA, at 42 U.S.C. § 12112 (d)(4)(a), prohibits employers from requiring current employees to undergo medical examinations or inquires unless it is job related and consistent with business necessity.

90.     Defendant Mayo's Vaccine Mandate violated 42 U.S.C. § 12112 (d)(4)(a) by requiring Plaintiff Ihde to undergo weekly Covid-19 testing.  Defendant Mayo's Vaccine Mandate policy requirement to undergo weekly Covid-19 testing was neither job related nor consistent with business necessity because Plaintiff Ihde's supervisor had approved Plaintiff Ihde to work remotely.

91.     As a result of Defendant Mayo's wrongful actions, Plaintiff Ihde suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FOURTH CAUSE OF ACTION

### Wrongful Discharge - Minnesota Refusal of Treatment Statute.

92.     Plaintiff Ihde restates and realleges paragraphs 1 through 91 as if fully set-forth herein.

93.     Minn. Stat. §12.39 creates a right for individuals "to refuse medical treatment, testing, physical or mental examination, [or] vaccination. . . ." The law further requires that those health care professionals administering vaccination notify the individual of the right to refuse the vaccination. *Id.* § 12.39, Subd. 2 (the "Refusal of Treatment" statute).

"… individuals have a fundamental right to refuse medical treatment, testing, physical or mental examination, vaccination, participation in experimental procedures and protocols, …".  Further, "before performing … vaccination of an individual … a health care provider shall notify the individual of the right to refuse the … vaccination, …".

94.     Plaintiff Ihde is an "individual" who has "fundamental rights" to "refuse medical treatment, testing" and "vaccines."

95.     Defendant Mayo is a "private entity" and a "health care provider" who is obligated to "notify the individual of the right to refuse vaccinations."

96.     The State of Minnesota is no longer under a state-declared "emergency," as Governor Timothy Walz officially ended the State's emergency effective June 30, 2021.

97.     Plaintiff Ihde has objected to being required to undergo compulsory medical treatment, including invasive injections, vaccinations, and testing. This refusal is protected by Minn. Stat. §12.39, and constitutes a refusal to engage in conduct contrary to Minnesota Public Policy. As a result of her refusal to accede to Defendant Mayo's imposition of such illegal conditions, the Plaintiff has been harassed, suspended, discharged, and had her earned benefits taken away.

98.     Defendant Mayo's actions in punishing the Plaintiff for refusing to engage in conduct prohibited by state law and public policy constitutes wrongful discharge. Defendant Mayo admitted in 2021 that vaccinations could not be mandatory and must instead be voluntary.  Defendant Mayo changed its policy in October 2021. Subsequently in March, 2022, Defendant Mayo changed its policy again to no longer require weekly testing for unvaccinated employees.

99. As a result of Defendant Mayo's illegal actions taken against Plaintiff Ihde, Plaintiff Ihde has suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## FIFTH CAUSE OF ACTION

### Breach of Contract/Promissory Estoppel

100. Plaintiff restates and realleges paragraphs 1 through 99 above as if fully set-forth herein.

101. Defendant Mayo had a policy of honoring diversity, equity and inclusion, including the protection of the religious rights of its employees.

102. Defendant Mayo wrote that it "is committed to upholding laws prohibiting discrimination and/or harassment on the basis of race, color, creed, *religion,* gender, *age*, national origin, marital status, sexual orientation, veteran's status, *disability*, or status with regard to public assistance." (emphasis added).

103. Defendant Mayo's policies and statements created a contract between it and its employees.

104. Defendant Mayo's actions in terminating Plaintiff Ihde, discriminating against her on the basis of her claiming religious belief and disability constitutes a breach of that contract.

105. Plaintiff Ihde has been damaged by Defendant's breach of contract.

106. In the alternative, Defendant Mayo's promises to its employees, both written and verbal, created an expectation on which the employees, including Plaintiff,

relied to her detriment. Mayo's promises to its employees, including Plaintiff Ihde, should be enforced to avoid injustice.

## JURY DEMAND

Plaintiff Ihde demands a trial by jury on all claims and issues for which she has a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ihde prays for judgment in her favor and against Defendant Mayo, and for an Order of the Court as follows:

1.    Adjudging that Defendant Mayo is liable to Plaintiff Ihde for her actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2.    Enjoining Defendant Mayo from taking further illegal action against Plaintiff Ihde in violation of both state and federal law, and Ordering Defendant Mayo to take action to restore Plaintiff Ihde to her position she would have enjoyed absent Defendant Mayo's illegal conduct;

3.    Awarding Plaintiff Ihde her costs, attorney fees and any other relief permitted by statute; and

4.     Awarding such other relief as the Court may deem just and equitable.

Dated: May 17, 2022

**MOHRMAN, KAARDAL &
ERICKSON, P.A.**

*s/Gregory M. Erickson*
Gregory M. Erickson, 276522
Vincent J. Fahnlander, 19220X
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Plaintiff Sherry Ihde*